IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| JAMES RONALD WILSON, | Cause No. CV 20-45-BLG-SPW-TJC |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |
| MR. BLUDSWORTH; ATTORNEY GENERAL OF THE STATE OF MONTANA, | |
| Respondents. | |

This case comes before the Court on Petitioner James Ronald Wilson's application for writ of habeas corpus under 28 U.S.C. § 2254. Wilson is a state prisoner appearing pro se.

## I.    28 U.S.C. § 2254 Petition

The Court is required to screen all actions brought by prisoners who seek relief. 28 U.S.C. § 1915(a). The Court must dismiss a habeas petition or portion thereof if the prisoner raises claims that are legally frivolous or fails to state a basis upon which relief may be granted. 28 U.S.C. § 1915A(b)(1), (2). Because it appeared that all but one of Mr. Wilson's claims were procedurally defaulted, he was directed to show cause as to why those claims should not be dismissed. (Doc. 5.) After being granted two extensions, Wilson filed his response to this Court's

order.  (Doc. 10.)

Wilson contends that his petition should not be dismissed because: (1) newly discovered evidence exists that former Colstrip Police Chief Larry Reinlasoder "corroborated frequent episodes of professional misconduct" which apparently rendered his police work in Wilson's case to be unethical; and, (2) trial counsel failed to provide effective assistance of counsel in violation of Wilson's constitutional rights.  See, (Doc. 10 at 1.)  As explained below, neither of these grounds constitutes cause to set aside the procedural default of Wilson's claims. Additionally, to the extent that Wilson seeks to present a stand-alone claim of actual innocence based upon Police Chief Reinlasoder's purported wrongdoing, that claim also fails.  Accordingly, Wilson's petition should be dismissed.

## II.   Background

The factual background of Wilson's state court proceedings was set forth at length in a prior order of the Court.  It will be briefly summarized as follows, with additional facts included as needed below.  See, (Doc. 5 at 2-4.)

Wilson was charged with Deliberate Homicide, Negligent Homicide, and Attempted Deliberate Homicide, for the shooting of three people outside a bar in Colstrip, Montana, on December 10, 2009.  A jury in Montana's Sixteenth Judicial District, Rosebud County, found Wilson guilty of all three offenses.  On October 4, 2011, Wilson was sentenced to 220-years at the Montana State Prison.

2

Wilson presented one claim on direct appeal: that his exclusion from a sidebar during jury selection warranted reversal. The Montana Supreme Court held Wilson's absence from the sidebar did not cause prejudice and affirmed the convictions. See, *State v. Wilson*, 2013 MT 70, ¶ 13, ¶ 31, 369 Mont. 282, 297 P.3d 1208.

Wilson next sought postconviction relief. He argued evidence was unlawfully removed from the crime scene, and that his trial counsel, Edmund Sheehy, provided ineffective assistance. Sheehy filed an affidavit in response, refuting Wilson's allegations. The district court dismissed Wilson's petition, finding that he failed to state a claim for relief under Mont. Code Ann. § 46-21-104(1)( c). Wilson did not timely file a direct appeal from the district court's denial of his petition.

Wilson subsequently filed a request for an out-of-time appeal with the Montana Supreme Court. The Court denied Wilson's request, finding that he failed to demonstrate any extraordinary circumstance in his case of which failure to review would constitute a gross injustice under M. R. App. R. 4(6). See, *Wilson v. State*, No. DA 14-0508, Or. (Mont. Aug. 19, 2014).

In 2018, Wilson filed an original petition for habeas relief with the Montana Supreme Court, claiming: his incarceration was illegal due to abnormalities that occurred in the underlying proceedings; the charge of Deliberate Homicide was

3

improperly delineated in district court documents; he was unlawfully denied a

"critical stage" mitigation hearing; and, trial counsel provided ineffective

assistance during sentencing. The Court found the claims Wilson attempted to

advance were inappropriately presented in a habeas proceeding, and that he was

precluded from attacking the validity of his conviction and underlying sentence

pursuant to MCA § 46-22-101(2). The claims were dismissed as procedurally

barred. *Wilson v. Fender*, OP 18-0077, 2018 WL 4090523, at *1 (Mont. Feb. 20,

2018).

Wilson then filed a second petition for postconviction relief in the district

court. The court denied Wilson's petition, finding that all of the claims he sought

to advance could have been raised in his original postconviction petition. On

appeal, Wilson argued: (1) Sheehy performed deficiently for failing to request a

lesser-included offense jury instruction, and (2) the incompetency and misconduct

of Chief of Police Reinlasoder warranted reversal of his convictions. The Montana

Supreme Court agreed Wilson's IAC claim was precluded because it was not

raised in Wilson's initial postconviction petition and the claim was untimely.[1]

Additionally, the Court held that Reinlasoder's purported misconduct was

---

[1] While not deciding the merits of the IAC claim, the Court observed that the affidavit Sheehy had provided in response to Wilson's first postconviction petition would defeat his new IAC claim: Sheehy affirmed Wilson was not interested in a plea agreement and that he forbade Sheehy from offering a lesser included offense instruction to the charge of Deliberate Homicide.

unrelated to Wilson's case, and that such activity failed to establish that Wilson's was actually innocent of the offenses of conviction. See, *Wilson v. State*, 438 P.3d 821, ¶¶ 6-8 (Mont. 2019).

### III.   Wilson's Claims

In his petition, Wilson presents the following claims: (1) an inadequate and ineffective investigation was performed at the crime scene, (Doc. 1 at 10-11); (2) "newly discovered evidence" of Chief of Police Reinlasoder's misconduct, specifically lying about his work experience on a job application, violated Wilson's rights, because Reinlasoder should have never been employed by the City of Colstrip, *Id.* at 12-13; (3) trial counsel provided ineffective assistance by: insisting Wilson testify in his own defense, failing to call Dr. Stratford as a witness, failing to offer lesser included-offense instructions, failing to present mitigation evidence, and failing to object to the State's closing argument, *Id.* at 16-18; and, (4) denial of the constitutional right to choice of counsel. *Id.* at 20. Also, as explained further below, it appears Wilson seeks to raise his "newly discovered evidence" claim, not only to demonstrate actual innocence to excuse the default of Claims 1, 3, and 4, but also as an independent claim. In either case, the claim fails.

/ / /

/ / /

5

## IV.   Analysis

As explained below, claims 1, 3, and 4 are procedurally defaulted, and Wilson has failed to demonstrate an adequate basis to set aside the default.  To the extent Wilson seeks to raise a stand-alone claim of actual innocence before this Court, the claim was addressed by the Montana Supreme Court and does not survive the deferential standard of federal habeas review.

### A. Procedurally Defaulted Claims- Claims 1, 3, and 4

Before a state prisoner may present a claim to a federal court, he must first exhaust his available state remedies.  28 U.S.C. § 2254(b)(1)(A); *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).  To do so, the petitioner must invoke one complete round of the state's established appellate review process, fairly presenting all constitutional claims to the state courts so that they have a full and fair opportunity to correct alleged constitutional errors at each level of appellate review. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  When a habeas petitioner has not fairly presented a constitutional claim to the highest state court, and it is clear that the state court would now refuse to consider it because of the state's procedural rules, the claim is said to be procedurally defaulted.  *Gray v. Netherland*, 518 U.S. 152, 161-62 (1996).  A federal court may not consider the merits of a procedurally defaulted claim unless the petitioner can demonstrate cause for his noncompliance and actual prejudice, or establish that a miscarriage of

justice would result from the lack of review.  See, *Schlup v. Delo*, 513 U.S. 298,

321 (1995); see also, *McKinney v. Ryan*, 730 F.3d 903, 913 (9th Cir. 2013).

Wilson does not dispute that Claims 1, 3, and 4 are procedurally defaulted.

Rather, he believes he can demonstrate grounds to excuse his procedural default.

See generally, (Doc. 10.)

### i.    Cause and Prejudice

A petitioner may overcome the prohibition on reviewing procedurally

defaulted claims if he is able to show "cause" to excuse his failure to comply with

the state procedural rule and "actual prejudice resulting from the alleged

constitutional violation." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991);

*Wainwright v. Sykes*, 433 U.S. 72, 84 (1977).  To establish cause for a default, a

petitioner must show that some objective factor external to the defense impeded

efforts to comply with the State's procedural rule.  See, *Murray v. Carrier*, 477

U.S. 478, 488 (1986).  A factor is external to the petitioner if it "cannot fairly be

attributed to him." *Coleman*, 501 U.S. at 753.  To show "prejudice," a petitioner

generally bears "the burden of showing not merely that the errors [in his

proceeding] constituted a *possibility* of prejudice, but that they worked to his

*actual* and substantial disadvantage, infecting his entire [proceeding] with errors of

constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982).

In his response to the Court's show cause order, Wilson asserts that his

7

default should be excused due to the ineffective assistance provided by trial counsel and because he was denied his choice of counsel. Wilson claims trial counsel Sheehy failed to call an expert witness, failed to request a lesser-included offense instruction, failed to object to the state's closing argument, and violated Wilson's right to be free of self-incrimination. See, (Doc. 10 at 1, 5-8.) In essence, Wilson reasserts his underlying constitutional claims against trial counsel, but now alleges Sheehy's purported deficient performance at trial should excuse the default of the claims.

In *Martinez v. Ryan*, the Supreme Court announced a "narrow exception" allowing the default of an IAC claim to be heard in federal habeas review when a substantial claim of ineffective assistance of trial counsel is defaulted during the initial review collateral proceeding as a result of petitioner having no postconviction counsel or having ineffective postconviction counsel. See, *Martinez v. Ryan*, 566 U.S. 1, 16-17 (2012). But in the instant case, Wilson did not default his IAC claims during the initial collateral review.

As set forth above, in his initial review postconviction proceedings, Wilson presented IAC claims to the district court in his petition. The claims were denied. Wilson neglected to timely appeal the district court's decision, and his subsequent effort at seeking an out-of-time review was denied by the Montana Supreme Court. Thus, the default of Wilson's IAC claims occurred not on the initial collateral

review, but rather on appeal from the denial of his postconviction proceedings as a result of Wilson's own failure to timely file. Since Wilson's default occurred on appeal from his initial collateral review proceeding, the *Martinez* exception does not apply in the instant case.[2]

Because Wilson has failed to establish cause, the Court need not consider whether he has shown actual prejudice resulting from the alleged constitutional violation. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

### i.    **Fundamental Miscarriage of Justice**

To come "within the narrow class of cases implicating a fundamental miscarriage of justice," there must be sufficient proof of actual innocence. *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc) (internal quotations and citations omitted).   A petitioner claiming actual innocence must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." *Id.* at 938.   In the federal habeas context "actual innocence" means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).   To make a credible claim of actual innocence, petitioner must produce

---

[2] See also, *Martinez* at 16 (explaining that a petitioner may not use the limited rule as "cause" to excuse a default which occurred in the "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts.")

"new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). The habeas court then considers all the evidence: old and new, incriminating and exculpatory, admissible at trial or not. *House v. Bell*, 547 U.S. 518, 538 (2006). On this complete record, the court makes a "probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* (quoting *Schlup*, 513 U.S. at 330).

Wilson asserts that irregularities occurred when Reinlasoder left the Billings Police Department in 2001. When Reinlasoder applied to be the Chief of Police in Colstrip in 2004, he apparently did not disclose previous disciplinary actions taken against him. He was subsequently fired for good cause from the Chief of Police position in 2012. See, (Doc. 10 at 2-3.) Wilson then points out that the Montana Supreme Court reversed a jury verdict and award for Reinlasoder in his wrongful termination case against Colstrip. With this background in mind, Wilson argues that Reinlasoder performed an inadequate and incompetent investigation in Wilson's underlying 2009 criminal case and engaged in acts that tainted the jury pool. *Id.* at 3-4. Wilson believes that in the same manner the city of Colstrip was afforded relief from the jury's award in Reinlasoder's wrongful termination case, he should be afforded relief in both his criminal and federal habeas proceedings. *Id.* at 4-5.

10

But Wilson's "newly discovered evidence" is not of the kind and character required to carry his burden under *Schlup*. As a preliminary matter, it is not newly discovered. Wilson points to events that occurred years ago. Moreover, none of the factual items cited by Wilson constitute reliable exculpatory evidence which was not presented at trial. *See Schlup*, 513 U.S. at 324. In reality, this information is not really even evidence, rather Wilson references unrelated events that occurred in the past and then provides his own opinion and conjecture about the impact on his case. Nowhere does Wilson present "new reliable evidence" needed to invoke the *Schlup* gateway, much less meet the demanding showing required to establish actual innocence. Moreover, the evidence that Wilson shot at three people and killed two of them remains unrefuted. Wilson is unable to show that "in light of all the evidence, it is more likely than not that no reasonable juror would find him guilty beyond a reasonable doubt." *Smith v. Baldwin*, 510 F. 3d 1127, 1140 (citing *Schlup*, 513 U.S. 298). Accordingly, Wilson has failed to make an adequate showing to excuse the procedural default of Claims 1, 3, and 4.

## B. Stand Alone Actual Innocence- Claim 2

Wilson claims that his "newly discovered evidence" of Chief of Police Reinlasoder's misconduct, specifically lying about his work experience on a job application, violated Wilson's rights because Reinlasoder should have never been employed by the City of Colstrip and, presumably, never should have been

11

involved in the underlying investigation of Wilson's criminal case. As a preliminary matter, while procedural hurdles can be overcome by a credible showing of actual innocence, the Supreme Court has not resolved whether a freestanding actual innocence claim is cognizable in federal habeas. See, *Herrera v. Collins*, 506 U.S. 390, 404 (1993). The Ninth Circuit has suggested that such a claim exists in capital cases. *Carriger v. Stewart*, 132 F. 3d 463, 476-77 (9th Cir. 1997). But even assuming that such a claim is cognizable, Wilson cannot meet his burden in the present case.

In determining that Wilson failed to establish an adequate basis for filing his second postconviction petition outside of the 1-year time frame, the Montana Supreme Court looked at the merits of Wilson's actual innocence claim. The Court observed:

> Wilson argues further that he discovered after his conviction that Reinlasoder falsified information on his employment application. Viewing the evidence as a whole, Wilson's allegation that Reinlasoder engaged in professional misconduct unrelated to Wilson's case is not evidence of Wilson's actual innocence of negligent homicide, deliberate homicide, or aggravated assault. Wilson does not allege the existence of newly discovered evidence that would establish that he "did not engage in the criminal conduct for which [he] was convicted."

*Wilson v. State*, 438 P.3d 821 (Mont. 2019) (citing Section 46-21-102(2), MCA).

Because the Montana Supreme Court has addressed the merits of Wilson's actual innocence claim, this Court's review is limited. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) provides a federal habeas court

may not grant relief to a state prisoner whose claim has already been "adjudicated on the merits in State court," 28 U.S.C. § 2254(d), unless the claim's adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by [this] Court," § 2254(d)(1), or "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2); see also, *Johnson v. Williams*, 568 U.S. 289, 292 (2013).

AEDPA substantially limits the power of federal courts to grant habeas relief to state prisoners, *Hurles v. Ryan*, 725 F. 3d 768, 777 (9ᵗʰ Cir. 2014), and "demands that state court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam). Thus, if a petitioner's claim has been "adjudicated on the merits" in state court, "AEDPA's highly deferential standards kick in." *Davis v Ayala*, 576 U.S. 257, 269 (2015) (citations omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

This Court's reasoning above in relation to the fundamental miscarriage of justice exception[3] applies equally to Wilson's stand-alone actual innocence claim.

---

[3] See, Sec. IV(A)(ii), supra.

Wilson failed to proffer any new or reliable evidence to support his claim of actual innocence. See e.g., *Schlup*, 513 U.S. at 324. Instead, he points to Reinlasoder's professional misconduct that is unrelated and separate from Wilson's own criminal proceedings.

Moreover, Wilson has not shown that the Montana Supreme Court's decision was contrary to or involved an unreasonable application of federal law or was based upon an unreasonable determination of the facts. See, 28 U.S.C. § 2254 Under the highly deferential AEDPA standard, this Court must afford deference to the state court decision. This claim should be denied.

### ii.   Conclusion

Because Wilson has failed to demonstrate cause and prejudice or a miscarriage of justice to excuse the procedural default of Claims 1, 3, and 4, these claims should be dismissed as procedurally defaulted without excuse. Additionally, Claim 2 should be denied because Wilson has failed to demonstrate that the Montana Supreme Court's denial of the claim was unreasonable.

## V.   Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules governing § 2254 Proceedings. A COA should issue as to those claims on which a petitioner makes a "substantial showing of the denial of a constitutional right." 28 U.S.C. §

2253(c)(2).  The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

A certificate of appealability should be denied because Wilson has not established an adequate basis to set aside the procedural default of Claims 1, 3, and 4, and the Montana Supreme Court's resolution of his actual innocence claim should be afforded deference.  There are no close questions and there is no basis to encourage further proceedings at this time.

Based upon the foregoing, the Court enters the following:

## RECOMMENDATION

1.  Mr. Wilson's Petition (Doc. 1) should be DISMISSED with prejudice.

2.  The Clerk of Court should be directed to enter a judgment of dismissal.

3.  A certificate of appealability should be DENIED.

### NOTICE OF RIGHT TO OBJECT
### TO FINDINGS & RECOMMENDATION
### AND CONSEQUENCES OF FAILURE TO OBJECT

Mr. Wilson may object to this Findings and Recommendation within 14 days.[4] 28 U.S.C. § 636(b)(1). Failure to timely file written objections may bar a de

---

[4] Rule 6(d) of the Federal Rules of Civil Procedure provides that "[w]hen a party may or must

novo determination by the district judge and/or waive the right to appeal.

Mr. Wilson must immediately notify the Court of any change in his mailing

address.  Failure to do so may result in dismissal of his case without notice to him.

DATED this 13th day of October, 2021.


/s/ Timothy J. Cavan
Timothy J. Cavan
United States Magistrate Judge

---

act within a specified time after being served and service is made under Rule 5(b)(2)(C) (mail) . .
. 3 days are added after the period would otherwise expire under Rule 6(a)."  Therefore, since
Wilson is being served by mail, he is entitled an additional three (3) days after the period would
otherwise expire.